Case: 1:22-mj-00076
Assigned To : Harvey, G. Michael
Assign. Date : 4/5/2022
Description: COMPLAINT W/ ARREST WARRANT

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **Criminal No.** |
| **v.** | ) | |
| | ) | **FILED UNDER SEAL** |
| ARIAN TAHERZADEH & | ) | |
| HAIDER ALI, | ) | |
| Defendants. | ) | |

### AFFIDAVIT IN SUPPORT OF
### CRIMINAL COMPLAINT AND ARREST WARRANTS

I, David Elias, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.     I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been
so employed since August 2021.  Prior to this date, I worked as a felony prosecutor in Cuyahoga
County, Ohio for over four years.  As a prosecutor, I investigated and prosecuted violent crime
and drug-related offenses under state statutes.  I am currently assigned to Squad CR-15 of the
FBI's Washington Field Office, Northern Virginia Resident Agency, and tasked with investigating
allegations of public corruption and fraud.  As a Special Agent, I have investigated violations of
federal statutes, including but not limited to public corruption, fraud, and other criminal matters.
In the course of my duties, I have conducted and participated in numerous investigations. Among
other things, I have participated in the execution of arrest and search warrants.

2.     As a federal agent, I am authorized to investigate violations of laws of the United
States, and as a law enforcement officer I am authorized to execute arrest warrants issued under
the authority of the United States.

3.     This affidavit is submitted for the purpose of establishing probable cause.  The facts

in this affidavit are based on my investigation, personal observations, training, and experience, as well as information conveyed to me by other law enforcement officials.  Because this affidavit is limited in purpose, it is not intended to include each and every fact and matter observed by me or known to the United States.

## PURPOSE OF AFFIDAVIT

4.     This affidavit is submitted in support of a criminal complaint charging the defendants, ARIAN TAHERZADEH (hereinafter "TAHERZADEH")and HAIDER ALI (hereinafter "ALI"), with one count of False Impersonation of an Officer of the United States, in violation of Title 18, United States Code, Section 912.  This affidavit is also submitted in support of an arrest warrant for TAHERZADEH and ALI.

## SUMMARY

5.     From beginning as early as February 2020 through the present, TAHERZADEH and ALI, have been falsely assuming and pretending to be officers or employees acting under the authority of the United States government, specifically the Department of Homeland Security, and have acted as such. TAHERZADEH and ALI, are not, in fact, employees of the Department of Homeland Security or any United States government agency.  TAHERZADEH and ALI have represented themselves as such to numerous people, many of whom are members of federal law enforcement agencies.  In furtherance of their false and fraudulent conduct, TAHERZADEH and ALI obtained paraphernalia with the insignias of and firearms, including handguns and assault rifles, used by federal law enforcement agencies.

6.     During the course of their conduct, TAHERZADEH and ALI have attempted to use their false and fraudulent affiliation with DHS to ingratiate themselves with members of federal

law enforcement and the defense community.   Specifically, TAHERZADEH has provided members of the United States Secret Service (USSS) and an employee of DHS with, among other things, rent-free apartments (with a total yearly rent of over $40,000 per apartment), iPhones, surveillance systems, a drone, a flat screen television, a case for storing an assault rifle, a generator, and law enforcement paraphernalia.   TAHERZADEH also offered these individuals use of, what TAHERZADEH represented to be "official government vehicles."   In addition, TAHERZADEH offered to purchase a $2,000 assault rifle for a United Secret Service Agent assigned to the First Lady's protective detail.   As of April 4, 2022, as a result of this conduct, four members of the Secret Service were placed on administrative leave pending further investigation.

7.     In furtherance of their false and fraudulent conduct, TAHERZADEH and ALI recruited an individual to be an "employee of DHS" and "serve on their task force."   As part of the "recruitment process" TAHERZADEH and ALI required that the "applicant" be shot with an Airsoft rifle to evaluate their pain tolerance and reaction.   Subsequent to being shot, the applicant was informed that their hiring was in process.   The applicant was also assigned to conduct research on an individual that provided support to the Department of Defense and intelligence community.

## **PROBABLE CAUSE**

### *Initial Investigation and Allegations*

8.     On March 14, 2022, a United States Postal Inspector (USPIS) responded to ███ █████, in Washington, D.C., to investigate an alleged assault involving a United States Postal Service (USPS) letter carrier.   The apartment complex, located at ██████████, is large and contains multiple units on several floors.   During the course of the investigation, the USPIS inspector learned from individuals living at the apartment complex that two individuals, Arian

TAHERZADEH and Haider ALI, who represent themselves as Department of Homeland Security Investigations (HSI) Special Agents, may have witnessed the assault.

9.      The USPIS inspector then interviewed TAHERZADEH and ALI.  Both individuals also self-identified as investigators with the U.S. Special Police Investigation Unit (USSP).  ALI identified the USSP as part of DHS.  Furthermore, ALI identified TAHERZADEH as an HSI Special Agent. TAHERZADEH and ALI identified themselves as deputized "special police" with the city government of the District of Columbia. TAHERZADEH and ALI claimed to be involved in undercover gang-related investigations as well as conducting investigations related to the violence at the United States Capitol on January 6, 2021.

10.     The USPIS inspector also learned from other residents at ████████████ that TAHERZADEH and ALI utilize several apartments in the complex.  TAHERZADEH and ALI told these residents that these apartments were being paid for by DHS.

11.     The USPIS inspector was also informed that both individuals utilize a black GMC SUV and describe it as their "official DHS vehicle."  According to residents, this vehicle is equipped with emergency lights.

12.     The USPIS inspector was also informed by residents that TAHERZADEH and ALI have video surveillance set up in various parts of the ████████████ apartment complex. Furthermore, TAHERZADEH and ALI represented to residents at the apartment complex that they can access, at any time, the cellular telephones of residents of the apartment complex.  These residents stated that they believe that TAHERZADEH and ALI had access to personal information of all the residents at the apartment complex.

13.     The USPIS inspector determined that TAHERZADEH and ALI were in regular contact with several members of the USSS, who also reside at ████████████. These USSS Agents were members of both the Uniformed and Protection divisions. The USPIS inspector learned that TAHERZADEH and ALI had provided gifts to the USSS Agents and their families, including, among other things, the use of their GMC SUV. Additionally, TAHERZADEH offered to provide a rifle to a member of the USSS valued at approximately $2,000.

14.     The USPIS Inspector provided this information to the DHS Office of Inspector General, which then referred the information to the Federal Bureau of Investigation (FBI) for further investigation. It was at this point that the FBI began its investigation, which corroborated the statements of residents obtained by the USPIS Inspector.

### *FBI Interviews of Apartment Building Residents*

### Witness 1

15.     Witness 1 lived at ████████ ██████████ in Washington, D.C. Witness 1 is not employed by any federal law enforcement entities.

16.     In or around July 2021, TAHERZADEH represented to Witness 1 that he was a Special Agent with HSI. TAHERZADEH represented that ALI was affiliated with HSI, but had no arrest powers.

17.     Witness 1 has seen TAHERZADEH'S DHS/HSI badge as well as credentials from USSP.

18.     Witness 1 observed TAHERZADEH carrying a firearm concealed on his person.

19.     While in apartments controlled and maintained by TAHERZADEH, Witness 1 has observed computer equipment, surveillance equipment, and servers.

20.     TAHERZADEH also showed Witness 1 a "HSI casefile" of a person TAHERZADEH was "working on."  The casefile was marked "Confidential."

21.     TAHERZADEH "recruited" Witness 1 to serve as an employee of HSI.  According to Witness 1, because he/she believed that TAHERZADEH was an employee of HSI, he/she agreed to pursue DHS/HSI employment through him.  TAHERZADEH represented that he had started the process of hiring Witness 1 as an employee of DHS/HSI and that he also had authority to deputize individuals as employees of DHS/HSI.

22.     As part of the "HSI recruiting process," TAHERZADEH tasked Witness 1 to conduct research into an individual who worked for the United States government as a contractor. Specifically, this individual provided support to the Department of Defense and Intelligence Community.

23.     Further, TAHERZADEH told Witness 1 that as part of the recruiting process, TAHERZADEH would have to shoot Witness 1 with an air rifle in order to evaluate Witness 1's reaction and pain tolerance.  According to Witness 1, because he/she believed this was part of the DHS/HSI recruiting process he/she agreed to be shot and subsequently was shot by TAHERZADEH.  During the shooting, ALI was present.

**Witness 2**

24.     Witness 2, a USSS Agent, currently assigned to the First Lady's protection detail, lives at ▮▮▮▮▮▮▮▮▮ in Washington, D.C.

25.     On or about July 4, 2021, Witness 2 was introduced to TAHERZADEH, who represented that he was an HSI Agent and that ALI was an HSI Analyst.   Although

TAHERZADEH was very outspoken about his job with HSI, he claimed that he was part of a covert task force.

26.     According to Witness 2, TAHERZADEH made it clear that he is the "go-to guy" if a resident needs anything in the building.  TAHERZADEH provided gifts or favors for residents, many of whom were members of law enforcement, including the FBI, USSS, or DHS, or employees of government agencies, including the Department of Defense and Navy.  For instance, TAHERZADEH previously loaned out his "government vehicle" to Witness 2's wife, and also provided her with a generator.  TAHERZADEH offered to provide Witness 2 an AR-15 style rifle that is valued at around $2,000.

27.     Witness 2 confirmed that TAHERZADEH and ALI both live at ████████████. Witness 2 stated ALI lives in a separate apartment on the floor below TAHERZADEH.

28.     Witness 2 noted that TAHERZADEH'S primary apartment has numerous security cameras.  TAHERZADEH has shown Witness 2 security footage from various areas of the apartment complex, indicating that he had gained access to the security system for the entire apartment complex.  Subsequent investigation revealed that many residents in this apartment complex are affiliated with federal law enforcement agencies.

29.     In furtherance of his efforts to represent himself to be a member of DHS/HSI, TAHERZADEH sent Witness 2 a photo in an HSI "vest" (see below).



30.     Witness 2 has also seen several other photos of TAHERZADEH in police tactical

gear. TAHERZADEH sent Witness 2 these photos (see below).



31.     TAHERZADEH has sent Witness 2 several photos of police gear in TAHERZADEH'S apartment (see below).  In the first photo, Pelican cases, which are often used to carry firearms, appear on a shelf behind TAHERZADEH.



32.     On February 22, 2022, TAHERZADEH sent Witness 2 pictures of what TAHERZADEH claimed to be an HSI in-service training (see below).  The investigation revealed that the photo TAHERZADEH sent is a stock photo from the internet, and there is no record that TAHERZADEH participated in any HSI training.



33.     While in TAHERZADEH's primary residence, Witness 2 saw a Federal Law Enforcement Training Center (hereinafter "FLETC") training certificate that he/she believed to be associated with TAHERZADEH.

34.     On multiple occasions in 2021 and 2022, Witness 2 observed TAHERZADEH carrying a Glock 19 Generation 5 firearm with a TLR-7A Streamlight flashlight attachment. Witness 2 also observed TAHERZADEH carrying this firearm concealed with an inside-the-waistband holster.  TAHERZADEH told Witness 2 that this was his HSI-issued firearm.  Witness

2 has seen TAHERZADEH wear this firearm in public, outside of his apartment as well as inside the apartment.

35.     On or about February 2, 2022, Witness 2 told TAHERZADEH that on February 17, 2022, Witness 2 would be attending USSS's Glock transition course.  Witness 2's federal agency was in the process of transitioning from P229 Sig Sauer to Glock 19 Generation 5 as the issued service weapon.  At some point after Witness 2 had received the issued Glock 19 Generation 5, TAHERZADEH made a comment "we are all transitioning to the Glock 19's in DHS."  After TAHERZADEH made that comment, TAHERZADEH pulled a concealed Glock 19 Generation 5 from his appendix area.  TAHERZADEH demonstrated that his was identical to Witness 2's issued Glock 19 Generation 5, to include the TLR-7A Streamlight flashlight attachment.

36.     On or about the second week of March 2022, TAHERZADEH came to Witness 2's apartment carrying a Glock 19 Generation 5 in a Ayin Tactical Holster.  TAHERZADEH stated that he had an extra holster and wanted to give Witness 2 the Ayin Tactical Holster for Witness 2's newly issued Glock 19 Generation 5.  Witness 2 is still in possession of this holster.

**Witness 3**

37.     Witness 3, a member of the United States Secret Service, Uniformed Division, assigned to protect the White House complex, lived in a penthouse apartment at ███████████, in Washington, D.C. from approximately February 2021 to January 2022.

38.     TAHERZADEH introduced himself to Witness 3 as an HSI agent. TAHERZADEH told Witness 3 that he is currently in a gang unit with DHS, and that TAHERZADEH used to work in crimes against children.  Witness 3 stated that TAHERZADEH'S credentials say ICE on them and indicate that he is a Special Agent.

39.     TAHERZADEH provided Witness 3 with a rent-free penthouse apartment for approximately one year, which cost approximately $40,200.   According to Witness 3, TAHERZADEH paid for another federal law enforcement officer's rent in the apartment complex.

40.     Witness 3 confirmed that TAHERZADEH lives in and has several apartments in the complex.

41.     Witness 3 stated that he/she received an email from what he/she believed to be TAHERZADEH'S DHS email: ataherzadeh@dhs.ussp.us.  Witness 3 also recalled that the email he/she received from this address has disclaimers regarding receiving information from a federal agency.  Subsequent investigation confirmed that this email address is false and fraudulent, and not a genuine United States government email address.

42.     While in TAHERZADEH's primary residence, Witness 3 observed that TAHERZADEH possessed FLETC training certificates and a Private Identity Verification card, commonly referred to as a "PIV card," which TAHERZADEH uses to access a laptop that is labeled with a "DHS" symbol.  Witness 3 stated that he/she saw a federal logon privacy notice when TAHERZADEH logged onto his DHS computer.

43.     Beginning in 2021, Witness 3 observed TAHERZADEH carrying a Glock 19, but cannot state how recently that occurred.  The most recent date possible is January 2022.

44.     TAHERZADEH provided Witness 3 with gifts including, an HSI coin and DHS patch.

45.     Witness 3 confirmed that ALI lives in the apartment complex, though he/she could not specify where ALI works.

**Witness 4**

46.     Witness 4 is a Document Analysis Expert with DHS-HSI and lives in the apartment complex located at ███████, Washington, D.C.

47.     In or around June of 2021, TAHERZADEH approached Witness 4 and told him/her he knew Witness 4 was affiliated with HSI or possibly the United States Citizenship Immigration Service (USCIS), which is in DHS.  TAHERZADEH told Witness 4 that he was an HSI Agent but that he was working undercover.  Witness 4 talked to her supervisors about TAHERZADEH and was unable to verify his information through HSI internal databases.  When Witness 4 confronted TAHERZADEH about this inability to locate his name in the HSI database, TAHERZADEH claimed that his name was redacted due to his undercover status.

48.     Witness 4 observed TAHERZADEH carrying a weapon, which he/she believes is a handgun, and stated that TAHERZADEH always carries it.

49.     TAHERZADEH claimed to Witness 4 that he has a list of all of the federal agents in the apartment complex.  Witness 4 stated that TAHERZADEH has codes to the elevators that gives him access to every floor, which is beyond what a normal resident possesses.

50.     While in TAHERZADEH's primary residence, Witness 4 saw a significant amount of law enforcement paraphernalia, including SWAT vests, a large safe, computers, a high-powered telescope and internal surveillance cameras in his apartment.  TAHERZADEH has shown Witness 4 surveillance footage from around the apartment complex.

**Witness 5**

51.     Witness 5 is a member of the United States Secret Service, Uniformed Division, assigned to protect the White House complex, and lived in a three-bedroom apartment at ███ ████, in Washington, D.C. from February 2021 to January 2022.

52.     Throughout that period, TAHERZADEH provided Witness 5 with a rent-free three-bedroom apartment, with an estimated value of approximately $48,240.   Specifically, TAHERZADEH told Witness 5 that HSI had approved extra rooms as part of his operations, and that Witness 5 could live in one of them for free.   The investigation confirmed that there are no such HSI operations and that it authorized no such expense

53.     TAHERZADEH claimed to be an agent with HSI in the gang unit. TAHERZADEH told Witness 5 that being a special police officer, part of USSP, was the "front end" of his HSI task force.   Witness 5 has seen TAHERZADEH tell other individuals at ███ ███ that he is an HSI agent and detail the training to become an HSI agent.   Witness 5 has seen TAHERZADEH interact with the Metropolitan Police Department (MPD) while wearing HSI gear.   For instance, according to Witness 5, on one occasion MPD responded to the apartment complex because of a complaint that TAHERZADEH was wearing police equipment.   Witness 5 stated that MPD responded to the scene but did not take any action.

54.     Witness 5 recalled that TAHERZADEH had a PIV card, which he believes said DHS on it, and that the background on TAHERZADEH's computer had "DHS information." TAHERZADEH showed Witness 5 an HSI badge and special police officer credentials.   Witness 5 said that TAHERZADEH identified himself primarily as DHS/HSI, but he carried the special

police officer badge on his person more often.  Witness 5 has seen DHS/HSI on TAHERZADEH'S ballistic vest as well.

55.     Since approximately February 2020, Witness 5 has seen TAHERZADEH carry a Glock 19 on his person.  Prior to the Glock, Witness 5 saw TAHERZADEH with a 226 or 229 handgun.  TAHERZADEH would carry the Glock 19 on his belt, both concealed and overt. Witness 5 has examined these firearms and believed them to be real.  Witness 5 also saw live rounds.  Witness 5 has also seen TAHERZADEH shoot a Glock 19 at the gun range.  Witness 5 also shot one of TAHERZADEH'S AR-15 style rifles at the gun range.  Witness 5 provided a video of TAHERZADEH using a rifle matching this description at a gun range in Northern Virginia.

56.     Witness 5 has seen TAHERZADEH drive two black "Tahoe" like vehicles and an Impala equipped with police lights.

57.     While in TAHERZADEH's primary residence, Witness 5 recalled seeing a desktop computer, cameras, and a gun locker.  On the walls of the apartment, Witness 5 saw a FLETC certificate and "Police 1" certificates.  Witness 5 also saw DHS patches, a handgun, a rifle and Airsoft guns.  Witness 5 recalled that the rifle was kept in TAHERZADEH'S office in his primary residence and that a gun was hidden under a desk in the living room.

58.     While in another apartment maintained and controlled by TAHERZADEH, Witness 5 recalled seeing police equipment, computer monitors, and a computer server. TAHERZADEH told Witness 5 that all of this equipment was for use in connection with the HSI task force.

59.     TAHERZADEH gave Witness 5 gifts, including a drone, a gun locker, and a Pelican case.

60.     Witness 5 stated that TAHERZADEH also rents a number of other apartments in the building.

61.     In or around January 2022, Witness 5 moved out of the rent-free apartment TAHERZADEH provided him. Witness 5 then observed TAHERZADEH began moving law enforcement and computer equipment into that apartment.

62.     Witness 5 said that TAHERZADEH has full access to all floors of the apartment and some restricted areas, and believes TAHERZADEH spoke with management of the apartment complex and was able to get access to these areas because of his HSI operation. Witness 5 further stated that TAHERZADEH has a document, which he/she has seen, containing the names and room numbers of residents in the apartment complex.

63.     TAHERZADEH told Witness 5 that ALI took care of all administrative issues with TAHERZADEH'S HSI task force.

### *Corporate Records*

64.     "United Special Police LLC" (USSP) is a Washington, D.C., limited liability company, with a registered address associated with a residence maintained and controlled by TAHERZADEH. TAHERZADEH is the beneficial owner of USSP.

65.     On USSP's website, USSP is described as a private law enforcement, investigative, and protective service headquartered in Washington, D.C. The website goes on to say that USSP can provide law enforcement, protective services, and investigative services within a contracted jurisdiction.

## <u>CONCLUSION</u>

66.    Based on my training and experience, and the information provided in this affidavit, there is probable cause to believe that as early as February 2020, in the District of Columbia and elsewhere, ARIAN TAHERZADEH and HAIDER ALI did falsely assume or pretend to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, in violation of Title 18, United States Code, Section 912.

_____
David Elias
Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 5th day of April, 2022,

G. Michael Harvey   Digitally signed by G. Michael Harvey
Date: 2022.04.05 20:38:35 -04'00'
_____
The Honorable G. Michael Harvey
United States Magistrate Judge

17